Rollins, S.
I shall pass upon the several exceptions to tbe findings of the referee herein in the order in which the referee discusses in his report the matters to which such exceptions relate.
First. The finding in respect to the form of the executor’s account as it was originally presented is important only as it affects the question of costs and counsel fees to be awarded him in the decree to be entered in this proceeding. The per diem allowance, which under section 2562 of the Code of Civil Procedure the surrogate may in his discretion award an executor or administrator for counsel fees in preparing his account, is not intended, it seems to me, to compensate the accounting party for his personal services in such preparation. For such services he is supposed to be rewarded by his statutory commissions. It is the purpose of section 2562 to enable, him without personal expense or loss to secure legal advice and assistance whenever such advice and assistance is needed for putting his account into proper form.
The referee has found that this executor was justified in presenting his aecount as it was originally filed. If by this finding he means that the executor did not, by pursuing that course, subject himself to a penalty, I agree with him. No one of the contesting parties is now in a position to claim that costs should be charged against the executor because of the incomplete fashion in which he disclosed at the outset his dealings with this estate. It was hi the power of any person, who was dissatisfied with that showing, to apply to the surrogate for relief before the submission of the account to- a referee. No such application was made, and no objector therefore can be sustained in contending that the expense attendant upon the reformation which was subsequently found to be necessary should be borne by the executor personally. It does not follow, however, that the accounting party should now be treated, as regards his claim for costs and counsel fees, as he would have been entitled to be treated if his account as first presented had been sufficiently explicit. He might well, it seems- to me, havfe separated in the beginning the corpus of the estate from the income. It would very likely have happened that the referee or the Surrogate might have directed a transfer of items of the account from one schedule to another, or the striking out of other items altogether, but the executor should in the first instance have rendered, according to his best judgment, some portion at least of the services which have here been practically performed by the referee. The question raised by this exception will be further and more particularly considered upon the settlement of the decree.
Second. I think that the referee has erred in finding that the executor was authorized by the will to manage the entire estate of the testator during the life of his widow. The power of *336 sale which, according to the determination of the supreme court, the executor was authorized to exercise at the widow’s death* extended to the portion of the estate given to her absolutely as well as to the portion given her for life, but prior to her death the executor was not, it seems to me, charged with any duty connected with the real property. It is true that he did in faGt manage such real property while the widow lived, and that he did so by her authority, but in this he acted as her agent, and he is not as executor entitled to be compensated for those services upon this accounting; nor was he called upon in this proceeding to render any account of such management.
Third. I sustain the referee in his findings that the executor is entitled to a single commission only upon the corpus of the estate, and that he was not entitled to retain such commissions before their allowance by the. surrogate. But I - hold in opposition to the referee that 'he must be charged with interest upon commissions improperly retained.
Fourth. I sustain the finding of the referee, which is the subject of the executor’s third exception.
Fifth. No exception has been taken to the referee’s decision, that “ all rents which accrued during the widow’s life belonged to the life estate, and that rents which accrued after her death, for periods partly before her death, should be apportioned.” The apportionment statute (chap. 542, L. 1875) was passed on June 7th, 1875, and took effect twenty days later. The testator’s widow died on October 8th of that year. It is claimed on behalf of her representative that there should be an apportionment of certain taxes which tlr -‘hree has charged against the life estate. One of these tax as paid on November 29th, 1870, before the statute of 1875 s enacted. As to this the referee must be sustained. The other tax was paid on November 29th, 1875. Chapter 542 provides that in making the apportionments which it directs, “ all just allowances and. deductions on account of charges on such rents shall be considered.” I hold that as regards this tax the claim of the widow’s administrator must be upheld.
Sixth. The reference finds that at the time of the testator’s death there was due and owing by him to the United States Government an income tax upon his income for the year 1869 ; that that tax was a personal debt of the testator and is chargeable to the principal estate. The executor paid on account of this tax, out of the moneys of the life estate, the sum of $505.62. It is not claimed by any of the parties hereto that the payment of this tax should be disallowed, but it is contended by the counsel for some of the remainder men that the referee has erred in charging it to principal. *
This exception must be overruled.
Seventh. Certain objections to the probate of this testator’s *337 will were filled upon its presentation for probate, but those objections were subsequently withdrawn and the will was established without controversy. In anticipation of a contest the executor had employed counsel and made preparation for trial. The attendant expense is found by the referee to be a charge upon the principal estate alone. When the executor’s account was first submitted objection was interposed to his claim to be credited with this disbursement upon the ground that it was excessive in amount. That objection was afterwards withdrawn, but the objectors now insist that the life estate should bear a part of this burden.
The evidence discloses that when the sum in question was paid by the executor to his counsel the latter agreed to render legal service in all matters relating to the estate that might subsequently present themselves in the course of its administration, and to claim no compensation therefor except as regarded proceedings in the courts. It also appears that from time to . time thereafter the executor frequently sought and obtained the advice of his counsel in unlitigated matters. No charge seems to have been made for these consultations during the continuance of the life estate. It is not to be presumed that the services of counsel were rendered gratuitously, and as one of the considerable items of his first bill was his charge for a retainer, I cannot avoid the conclusion that some portion of the amounts received by him should be charged against the life estate. I do not find in the testimony the requisite data for making a proper apportionment, and unless some basis for such apportionment can be agreed on, there must be a further investigation of this matter before the referee.
Eighth. At the time of the testator’s death there was in force a law of the United States, (sections 124 and 125, act of June 30, 1864, as amended by act of July 13, 1866, 14 U. S. Stat. at Large, 140,) under which legacies of personal property passing by will to a person who was a stranger to the blood of a testator, were subject to a tax of six per cent, to be paid by his executor. This tax was declared by the statute to be “ due and payable whenever the party interested in such legacy should become entitled to the possession or enjoyment thereof,” and the statute further provided that such tax should be “ deducted from the particular legacy,” on account of which the same should be charged. By the act of July 14, 1870, the tax referred to was repealed from and after the 1st day of October of that year. In September 1870, the Commissioner of Internal Revenue issued instructions to his subordinates to the effect that a legacy passing from a person dying before October 1st, 1870, became or would become subject to tax whenever the legatee had or should become entitled to possession thereof. This interpretation of the statute Avas afterwards sustained by the district and *338 circuit courts of tbe United States for this district, but was subsequently overruled by tbe supreme court of tbe United States. Mason v. Sargent (104 U. S., 689).
Tbe law was thus settled, that where a legatee under a will bad not become entitled in possession before the 1st day of October, 1870, no tax could be collected on account of his legacy. On tbe 8th day of October, 1875, tbe day of tbe death of the testator’s widow, Mrs. Brandis, an adopted daughter of tbe testator, but a stranger in blood, became under bis will entitled in possession to a legacy of $15,000. A collector of internal revenue demanded from tbe executor as a tax upon this legacy tbe sum of $900. After some objection and delay the executor paid it. Tbe referee has found that be is entitled to credit for such payment out of the testator’s principal estate, notwithstanding the positive provision of tbe United States statute that tbe .tax upon a legacy should be deducted from tbe legacy itself. It is urged by tbe executor’s counsel that this charge against tbe principal estate should be sustained because the amount in ■question was paid to prevent, proceedings which the internal revenue officers threatened to take against the executor, the prosecution of which proceedings would, it is claimed, have been ■.seriously detrimental to the estate. The only penalty that the the executor .would have incurred by lawful resistance to the ■claim of the Government was a penalty not exceeding $1,000, which anight have been imposed on him personally. If he had taken the precaution to pay the alleged tax- under protest, and had reasonably presented a claim to the Commissioner of Internal Revenue for its refunding, the United States would, of course, have returned the amount paid after the decision of the supreme •court that its payment had not been lawfully exacted. It is perhaps not too late even now for the executor to take steps which will enable him to recover this $900.
After much hesitation I feel compelled to find that under all the circumstances he was not warranted in making the payment ■without protest, and that having made no proper effort to re- . cover the amount paid, he cannot be allowed credit therefor in .his accounts. It is clear that to take this $900 from the legatee would be unjust. She was not consulted in the premises and gave the executor no instructions; he cannot be treated as her agent, .in making the payment. She was entitled to the entire legacy of $15,000 given her by the testator. That legacy was never subject to a tax, and she should receive it without abatement.
The referee does not state the reasons for his conclusion that -the $900 should be charged to the principal estate.
Counsel for Mr. Brandis suggests- some considerations why that ¡.course should be pursued.' But while I have no reason to ,doubt\that the executor acted in good faith, it would, I think, be more just and equitable to refuse to credit him with this disburse *339 ment than to charge it to any of the beneficiaries under the will.
Ninth. It follows from the foregoing that the referee must be sustained in his finding that Mrs. Brandis is entitled to interest upon the full amount of her legacy, and I agree with him as to the rate at which such interest should be computed and as to the time when it began to run.
Tenth. The interests of the estate did not require the accounting party to appeal from the order whereby he was directed to pay John F. Peyser the- sum of $5,000 on account of lfis legacy. An executor who has employed and paid counsel for legal services in the course of his administration should not be reimbursed for such payment out of the funds of Ms testator’s estate unless a proper regard for the interests of the estate seemed to make such services necessary at the time they were invoked. The order in question would have been refused if the surrogate had been in doubt whether its enforcement would jeopard the rights of any person interested in this estate. The executor would have been protected in obeying it, and should not now be allowed credit for his counsel fees on appeal.
Eleventh. With the foregomg modifications the referee’s report is confirmed.